**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
DARRIN W. YOUNG,                                      Chapter 13
           DEBTOR                          Case No. 08-10012-WCH

_____

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matters before the Court are the Objection to Confirmation of Amended Chapter 13 Plan filed by eCAST Settlement Corporation ("eCAST"), as an agent for FIA Card Services, a/k/a Bank of America (the "Objection"), and the Response filed by Darrin W. Young (the "Debtor"). eCAST objects to the Debtor's plan asserting, *inter alia*, that the Debtor has understated his projected disposable income by claiming expense deductions on Form 22C to which he is not entitled. For the reasons set forth below, I will enter an order overruling the Objection.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 13 petition with all schedules on January 2, 2008. On February 28, 2008, he filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C"). On line 20 of Form 22C, the Debtor reported current monthly income of $4,828.43. This is consistent with the current monthly gross income reported on his Schedule I - Current Income of Individual Debtor(s) ("Schedule I"). Line 21 of Form 22C reflects that the Debtor's annualized current monthly income is $57,941.16. Because this amount exceeds the applicable median family income for debtors in this

1

state, specifically $51,176, the Debtor is an above median income debtor with an applicable

commitment period of five years pursuant to 11 U.S.C. § 1325(b)(4).  As an above median income

debtor, he was then required to calculate his "disposable income" with reference to the deductions

allowed under 11 U.S.C. § 707(b)(2) using National and Local Standards of the Internal Revenue

Service (the "Local Standards").  The following table summarizes and compares the deductions

claimed on Form 22C to his monthly expenses as reflected in Schedule J - Current Expenditures of

Individual Debtor(s) ("Schedule J").

| | Expense | Schedule J | Form 22C | Expense Deduction | Line |
|---|---|---|---|---|---|
| T1 | Rent/Mortgage Payment | $850 | $1,144 | Mortgage/Rent Expense | Line 25B |
| T2 | Electricity/Heating Fuel | $280 | $477 | Housing and Utilities; Non-Mortgage Expenses | Line 25A |
| T3 | Telephone | $65 | | | |
| T4 | Cable | $12 | | | |
| T5 | Home Maintenance | $100 | | | |
| T6 | Food | $500 | $494 | Food, Apparel, Housekeeping Supplies, Personal | Line 24A |
| T7 | Clothing | $100 | | Care, and Misc. | |
| T8 | Laundry/DryCleaning | $40 | | | |
| T9 | Recreation | $200 | | | |
| T10 | Medical/Dental | $54 | $54 | Out-of-Pocket Health Care | Line 24B |
| T11 | Transportation | $220 | $412 | Vehicle Operation/Public Transportation Expense | Line 27A |
| T12 | Charitable Contributions | $20 | $20 | Charitable Contributions | Line 45 |
| T13 | Auto Insurance | $150 | N/A* | | |
| T14 | Auto Payment | $296 | $296 | Secured Payment for Vehicle 1 | Line 47 |
| T15 | Time Share Fee | $75 | N/A | | |
| T16 | Storage | $82 | $82 | Storage | Line 60b |
| T17 | Health Club | $49 | $49 | Health Club | Line 60a |
| T18 | | | $182 | Transportation Ownership Expense - Vehicle 1 | Line 28 |
| T19 | | | $478 | Transportation Ownership Expense - Vehicle 2 | Line 29 |
| T20 | Taxes (Schedule I) | $1,412.18 | $1,412.18 | Taxes | Line 30 |
| T21 | "Insurance" (Schedule I) | $12.52 | $72.22 | Health Insurance | Line 39 |
| T22 | "Med Pretax" (Schedule I) | $62.24 | | | |
| T23 | "Vision" (Schedule I) | $3.46 | | | |
| T24 | | | $9.40 | Chapter 13 Administrative Expense | Line 50 |
| T25 | 401k (Schedule I) | $144.86 | $0** | Qualified Retirement Deduction | Line 55 |
| T26 | Life Insurance (Schedule I) | $6.41 | $0** | Personal Life Insurance | Line 32 |
| T27 | Total Expenses | $4,734.67 | $5,181.80 | Total Deductions | Line 52*** |
| | | | | | |
| | * Auto Insurance could fall within the meaning of "Ownership Expense." | | | | |
| | ** The Debtor appears to be entitled to a deduction in the amount of his actual expense. | | | | |
| | *** Line 52 of Form 22C is actually calculated as $5,050.80 because it does not include | | | | |
| | the additional expense claims located in Lines 60a and b. | | | | |

2

As reflected on line T1 of the above table, the Debtor claimed a rental expense deduction of $1,144.00, the full amount available under the IRS "Local Standards: housing and utilities; mortgage/rent expense" (the "IRS Housing Standards").[1]  Schedule J indicates, however, that the Debtor's monthly rent payment is only $850, $294 less than the claimed deduction.[2]

On Form 22C, the Debtor claims an "ownership expense" for two vehicles.  On Schedule B - Personal Property, the Debtor discloses ownership interests in a 1997 Ford F-150 Pickup with trailer (the "F-150") and a 2006 Harley Motorcycle (the "Harley").  Schedule D - Creditors Holding Secured Claims ("Schedule D"), reveals that there is a lien against the Harley and that the F-150 is not subject to liens.  On line 28(a) of Form 22C, the Debtor claims an expense of $478 under the "IRS Transportation Standards, Ownership Costs" (the "IRS Transportation Standards") reduced on line 28(b) by his average monthly payment of $296 for a debt secured by "Vehicle 1," in this case the Harley, for a net ownership expense of $182 on line 28(c).[3]  On line 29, he again claims an expense under the IRS Transportation Standards in the amount of $478 for "Vehicle 2," presumably for the F-150.[4]  Consistent with Schedule D, this expense is not reduced by any secured debt payment on the vehicle.[5]  On line 47(a), the Debtor claims an additional expense related to the Harley as a

---

[1] As the only real property disclosed on Schedule A - Real Property, is a timeshare in Florida, and the Debtor listed his primary residence to be in Beverly, Massachusetts in his bankruptcy petition. I assume that the $850 is a rental expense for his Beverly residence.

[2] *See* Line T1.

[3] *See* Line T18.

[4] *See* Line T19.

[5] *Id.*

3

future payment on a secured claim in the amount of $296 per month.[6]

The total of all deductions claimed by the Debtor, as listed on line 52 of Form 22C, is $5,050.80. This total, however, does not include the $131 in additional expense claims listed on line 60.[7] Including these expenses, the new total is $5,181.80.[8] When this amount is subtracted from the Debtor's current monthly income of $4,828.43, it yields monthly disposable income of negative $353.37. Despite negative monthly disposable income as calculated under 11 U.S.C. § 1325(b)(3) on Form 22C, Schedule J reveals that the Debtor has actual monthly net income of $93.76.

The Debtor's First Amended Chapter 13 Plan (the "Plan"), filed contemporaneously with Form 22C, provides for monthly payments of $94 over a term of sixty months. Through the Plan, the Debtor does not provide for payment of any secured or priority claims, although he proposes to pay TD Banknorth directly outside the plan on account of a claim secured by the Harley. In addition to an administrative claim in the amount of $1,274 for Debtor's counsel's fees, the Debtor proposes to pay the holders of general unsecured claims a dividend of not less than 7.55%, totaling $50,371.16.

eCAST, the holder of over 75% of the total value of unsecured claims filed in this case, filed the Objection on the grounds that the Debtor fails to devote all of his projected disposable income received during the commitment period to the unsecured creditors, and that the amount of property to be received under the Plan is less than the amount of its claim. eCAST's objection asserts, *inter alia*, that the Debtor's projected disposable income is understated due to the Debtor's claiming of

---

[6] *See* Line T14.

[7] *See* Line T16, T17.

[8] *See* Line T27.

4

"phantom" expense deductions to which he is not entitled.  The Debtor filed a general response

disputing eCAST's allegations.

I conducted a hearing on the Objection on May 15, 2008.  At the conclusion of oral

arguments, I took the matter under advisement.  Afterwards, both parties, as well as the Chapter 13

trustee (the "Trustee"), filed briefs.

## III. <u>POSITIONS OF THE PARTIES</u>

<u>eCAST</u>

As stated above, eCAST asserts that the Debtor understated his projected disposable income

on Form 22C by taking deductions to which he is not entitled.  eCAST agrees that the Debtor

properly determined the current monthly income component of the disposable income calculation,

but contends that the sum of his expense deductions on Form 22C is properly calculated to be

$3,800.80, not the $5,050.80 stated.  Specifically, eCAST asserts that the Debtor's housing expense

deduction is overstated and that he is not entitled to expense deductions with respect to his two

vehicles.

From the outset, eCAST urges that I be mindful of the guidance that the United States

Bankruptcy Appellate Panel for the First Circuit expressed in *Kibbe v. Sumski*.[9]  There, the Panel

concluded that Congress' primary intent in enacting the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005 ("BAPCPA") was to "ensure that debtors repay creditors the maximum they

can afford."[10]  As such, eCAST argues that above median income debtors are required to use the

means test expenses, with appropriate adjustments, and not Schedule J for purposes of calculating

---

[9] *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 314 (B.A.P. 1st Cir. 2007).

[10] *Id.* (*citing* H.R. Rep. No. 109-31, pt. 1, at 2 (2005)).

projected disposable income.

eCAST argues that the Debtor is not entitled to the full amount of the IRS Housing Standard where his actual housing expense is lower for a number of reasons. First, the eCAST notes that allowing the Debtor to deduct $1,144 from the disposable income calculation where his housing expense is only $850 creates an undeserved windfall of $294[11] that does not further the policy objective expressed in *Kibbe*.[12] Second, eCAST asserts that Chapter 13 debtors' expenses are still subject to the threshold requirement of reasonable necessity and that BAPCPA did not eliminate an independent determination of reasonable necessity. Relying on *In re McGillis*,[13] eCAST argues that 11 U.S.C. § 1325(b)(3) should be interpreted as offering a further guideline to ensure the expenses claimed by above median income debtors are reasonably necessary. In this case, eCAST asserts the entire IRS Housing Standard is not reasonably necessary to the extent it exceeds the Debtor's actual expense.

Third, eCAST contends that construing the Local Standards as fixed allowances renders the new language within 11 U.S.C. § 1325(b)(3) "[shall be determined] in accordance with [section 707(b)(2)]" redundant, as it could have simply said "shall be the amounts in . . . section 707(b)(2)." eCAST notes that this phrase is also used in 11 U.S.C. § 1325(b)(2) and cannot be construed to override the bankruptcy court's independent consideration of whether a support payment expense is required.[14] Turning its textual argument to the word "applicable," eCAST relies on *In re*

---

[11] *See* Line T1.

[12] *In re Kibbe*, 361 B.R. at 314.

[13] *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007).

[14] 11 U.S.C. § 1325(b)(2) provides in relevant part:

*Devilliers*[15] for the proposition that "applicable" modifies "monthly expense amounts" such that the Local Standards are only to be used by those debtors who actually incur the type of expense covered by the Local Standards and only to the extent the expense is actually incurred.

Fourth, eCAST urges me to adopt the IRS guidelines, namely, the Financial Analysis Handbook of the Internal Revenue Manual (the "IRM"), to interpret the Local Standards. It states that IRM 5.15.1.7 provides that "Taxpayers will normally be allowed the local standard or the amount actually paid, whichever is less." Relying on *In re Rezentes*,[16] one of many cases which have looked to the IRM, eCAST argues that a Chapter 13 debtor is limited to deducting his actual expense, and not the higher IRS Housing Standard, to determine his disposable income. It asserts that had Congress intended to adopt the Local Standards but prevent courts from looking to the IRS' own guidelines, the statutory prohibition would be express. Moreover, eCAST contends that the legislative history of BAPCPA also demonstrates that Congress intended to incorporate the IRM as a House Report accompanying the final bill references the IRM.[17]

Finally, eCAST argues that cases drawing a distinction between "applicable" and "actual" in 11 U.S.C. § 707(b)(2) do so with no basis and attach too little meaning to "applicable." It

---

For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made *in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child*) less amounts reasonably necessary to be expended–

(emphasis supplied).

[15] *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007).

[16] *In re Rezentes*, 368 B.R. 55 (Bankr. D. Haw. 2007).

[17] H.R. Rep. 109-31(I), *13-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89.

contends that if "applicable" simply meant choosing the right number from the Local Standards, it would be redundant because there is no other way to use the Local Standards.

With respect to the Debtor's expense of $478 for the F-150,[18] eCAST argues that the Debtor is not entitled to an ownership expense deduction on a vehicle he owns outright.   While acknowledging that there is a split of authority on the subject, eCAST asserts that appellate courts have uniformly rejected the position that debtors should be entitled to an ownership deduction where they have no ownership costs.[19]   eCAST repeats many of the same textual and policy arguments put forth with respect to the IRS Housing Standard.  Relying on *Babin v. Wilson*,[20] it asserts that applying the Local Standard to only those to whom it is applicable takes into consideration  the "plain meaning" of applicable as well as the purpose behind BAPCPA.  To illustrate, it cites *In re Deadmond*,[21] a case concluding that allowing the debtor to deduct "phantom payments" on non-operational cars defied common sense as it would allow the debtor to shelter  vast  amounts of income.

eCAST also contends that the Debtor is not entitled to either the $296 deduction for repayment of a secured debt or the $182 ownership expense deduction with respect to the Harley as

---

[18] *See* Line T19.

[19] *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (B.A.P. 8th Cir. 2008); *Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 380 B.R. 799 (B.A.P. 9th Cir. 2007); *Grossman v. Sawdy*, 384 B.R. 199 (E.D. Wis. 2008); *United States Trustee v. Deadmond (In re Deadmond)*, No. CV 07-15-H-CCL, 2008 WL 191165 (D. Mont. Jan. 22, 2008); *Meade v. McVay (In re Meade)*, 384 B.R. 132 (W.D. Tex. 2008); *Wieland v. Thomas*, 382 B.R. 793 (D. Kan. 2008); *Fokkena v. Hartwick (In re Hartwick)*, 373 B.R. 645 (D. Minn. 2007); *Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762 (E.D. Wis. 2007).

[20] *Babin v. Wilson*, 383 B.R. at 729.

[21] *In re Deadmond*, 2008 WL 191165 at *4.

it is a "luxury item."[22]  Again, eCAST relies on *McGillis* for the proposition that an above median income Chapter 13 debtor's expenses must be reasonably necessary.  Because the Debtor owns a second vehicle, the F-150, eCAST contends that the Harley cannot be reasonably necessary for transportation.  Moreover, eCAST asserts that the Harley does not fit into any other category of other necessary expenses.  Because the Harley is not a reasonably necessary vehicle, eCAST takes the position that debt repayment on account of the loan securing the Harley is therefore not a reasonably necessary expense.

In sum, eCAST asserts that the total deductions claim by the Debtor should be reduced by $294 for the IRS Housing Standard,[23] $478 for the F-150 ownership expense,[24] $182 for the Harley ownership expense,[25] and $296 for the secured debt repayment on account of the Harley.[26]  This would reduce the total amount of deductions to $3,800.80.  Subtracting this amount from $4,828.43, the Debtor's current monthly income, yields monthly disposable income of $1,027.63.  Because eCAST's claim is not being paid in full and the Plan only provides for monthly payments of $94, it argues that the Plan cannot be confirmed.

The Debtor

The Debtor asserts that he properly completed Form 22C and is devoting all his disposable

---

[22] *See* Lines T14, T18.

[23] Line T1.

[24] Line T19.

[25] Line T18.

[26] Line T14.

9

income to the Plan.  Relying on *In re Barrett*,[27] the Debtor asserts that the Local Standards are fixed

allowances and that there is nothing in 11 U.S.C. § 707(b)(2) that suggests they are merely maximum

allowable amounts.  Moreover, the Debtor construes "applicable" to mean that he is entitled to the

IRS standard *applicable* to his locality, in contrast to other necessary expenses which are limited to

the actual amount of the expense.[28]  Additionally, the Debtor cites several cases holding that there

is  no  authority  in  the  Bankruptcy  Code  to  use  the  IRM  when  interpreting  11  U.S.C.  §

707(b)(2)(A)(ii)(I).[29]

With respect to the ownership expense for the F-150, the Debtor asserts that other courts have

allowed debtors to claim such an expense on vehicles owned outright.[30]  Again, the Debtor argues

that the Local Standards are fixed allowances and that use of the IRM is inappropriate.

The Debtor further argues that the Harley is not a "luxury item" and that eCAST has cited

no authority to suggest that a motorcycle does not qualify as transportation entitled to a deduction

on Form 22C.  To the contrary, the Debtor points out that in *In re Barrett*, one of the vehicles

allowed an ownership deduction was a 2006 Yamaha 650 V-Star motorcycle.  The Debtor further

argues that the Harley is his primary vehicle despite the fact that his work sometimes requires him

to use the F-150.

Finally, the Debtor notes that if I were to accept eCAST's position, the Debtor would be

---

[27] *In re Barrett*, 371 B.R. 855 (Bankr. S.D. Ill. 2007).

[28] *Id.*

[29] *In re Swan*, 368 B.R. 12 (Bankr. N.D. Cal. 2007); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006); *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006);

[30] *In re Briscoe*, 374 B.R. 1 (Bankr. D.D.C. 2007); *In re Chamberlain*, 369 B.R. 519 (Bankr. D. Ariz. 2008).

required to pay $1,027.63 per month where his actual disposable income is only $93.76. This, the Debtor contends, would result in the failure of any plan proposed as the Debtor simply does not have that much excess income. The Debtor therfore urges me to look to his actual ability to pay and determine whether the Plan, as proposed, is a good faith effort at repayment.

The Trustee

From the outset, the Trustee notes several discrepancies in both parties' calculations of the Debtor's disposable income. First, the Trustee asserts that eCAST fails to account for the additional expenses claimed on line 60 of Form 22C totaling $131.[31] When added to the Debtor's total, the total amount of expense deductions rises to $5,181.80.[32] The Trustee also notes that the Debtor failed to include on Form 22C the $144.86 per month that he contributes to a 401(k) plan.[33] This increases the Debtor's total expense deductions to $5,326.66.

The Trustee asserts that the Debtor may claim the full amount of the IRS Housing Standard. The Trustee relies on Judge Feeney's decision in *In re Phillips*,[34] in which cases holding that a debtor is entitled to claim the standardized housing expense even where the actual rent is less were cited with approval. The Trustee contends, however, that the Debtor is not entitled to an ownership expense deduction on the F-150. Relying on *In re Ransom*, the Trustee concludes that statute can only be interpreted to apply in cases where debtors actually pay such an expense.[35] The Trustee

---

[31] *See* Line T16, T17.

[32] These expenses into account when preparing the above table. *See* Line T27.

[33] *See* Line T25.

[34] *In re Phillips*, 382 B.R. 153 (Bankr. D. Mass. 2008)

[35] *In re Ransom*, 380 B.R. at 807-808.

asserts the expense deductions related to the Harley are appropriate as the installment payments are reasonable, particularly in the absence of a payment for the F-150.

The Trustee further argues that the analysis of the Plan does not stop with the means test. She contends that *In re Phillips* recognized an exception to the objective test found in 11 U.S.C. § 1325(b)(3): "an above-median income debtor's plan that proposes to pay the debtor's disposable income employing the National and Local Standards in computing expenses in accordance with § 1325(b)(3) might still be objectionable in extraordinary circumstances under § 1325(a)(3) on the basis of a lack of good faith."[36]

In the present case, the Trustee argues that the ownership expense related to the F-150 must be stricken, reducing the total expense deductions to $4,848.66. When subtracted from the Debtor's current monthly disposable income, this yields a disposable income of $20.23. As the Trustee does not object to the Debtor's actual expenses on Schedule J, she asserts that a plan payment of $94 per month represents a good faith effort at repayment.

## IV. DISCUSSION

### A. The Statutory Framework

Section 1325(b) of the Bankruptcy Code, as amended by BAPCPA, provides in relevant part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

---

[36] *In re Phillips*, 382 B.R. at 165.

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--

>(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

>    (ii) for charitable contributions . . . ; and

>(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than--

>(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;[37]

This section incorporates the means test found in 11 U.S.C. § 707(b)(2), which is used to determine whether a Chapter 7 case is presumptively abusive.  The language relevant to the current  analysis is as follows:

>The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. . . .[38]

B.  Interpreting 11 U.S.C. § 707(b)(2)

Like other amendments made by BAPCPA, the provisions relating to the expense component of the disposable income calculation now at issue have created a sizable and significant split of authority across the country.  Despite the thorough discussion of this issue in a number of cases, no

---

[37] 11 U.S.C. § 1325(b)(1)-(3)(A).

[38] 11 U.S.C. § 707(b)(2)(A)(ii)(I).

discernable majority view has emerged.  While it is helpful to organize lines of authority in terms

of those cases that allowed the debtor to deduct the full amount of the IRS Housing Standard[39] and

those that did not,[40] and those that allowed the Debtor an ownership expense deduction on a vehicle

owned outright[41] and those that did not,[42] these generalized groups fail to capture the subtleties and

---

[39] *In re Reinstein*, No. 07-27045-jes, 2008 WL 2902170 (Bankr. E.D. Wis. July 28, 2008);
*In re Osei*, 389 B.R. 339 (Bankr. S.D.N.Y. 2008); *In re Egbert*, 384 B.R. 818 (Bankr. E.D. Ark.
2008); *In re Phillips*, 382 B.R. 153 (Bankr. D. Mass. 2008); *In re Morgan*, 374 B.R. 353 (Bankr.
S.D. Fla. 2007); *In re Briscoe*, 374 B.R. 1 (Bankr. D.D.C. 2007); *In re Swan*, 368 B.R. 12
(Bankr. N.D. Cal. 2007); *In re Naslund*, 359 B.R. 781 (Bankr. D. Mont. 2006); *In re Farrar-
Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006).

[40] *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007); *In re Rezentes*, 368 B.R. 55
(Bankr. D. Haw. 2007); *In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006).  *See also*
footnote 42, *infra*.

[41] *Pearson v. Stewart (In re Pearson)*, BAP No. WY-07-097, 2008 WL 2878619 (B.A.P.
10th Cir. July 28, 2008); *Hildebrand v. Kimbro (In re Kimbro)*, 389 B.R. 518 (B.A.P. 6th Cir.
2008); *In re Mati*, No. 07-13323-JNF, 2008 WL 2389234 (Bankr. D. Mass. June 9, 2008); *In re
Sawicki*, No. 2-07-bk-3493-CGC, 2008 WL 410229 (Bankr. D. Az. Feb. 12, 2008); *In re
Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2007); *In re Barrett*, 371 B.R. 855 (Bankr. S.D. Ill.
2007); *In re Vesper*, 371 B.R. 426 (Bankr. D. Alaska 2007); *In re Puetz*, 370 B.R. 386
(Bankr.D.Kan.2007); *In re Armstrong*, 370 B.R. 323 (Bankr. E.D. Wash. 2007); *In re
Chamberlain*, 369 B.R. 519 (Bankr. D. Ariz. 2008); *In re Swan*, 368 B.R. 12 (Bankr. N.D. Cal.
2007); *In re Lynch*, 368 B.R. 487 (Bankr. E.D. Va. 2007); *In re Billie*, 367 B.R. 586 (Bankr.
N.D. Ohio 2007); *In re Zaporski*, 366 B.R. 758 (Bankr. E.D. Mich. 2007); *In re Watson*, 366
B.R. 523 (Bankr. D. Md. 2007); *In re Ragle*, No. 06-30208, 2007 WL 1119632 (Bankr. E.D. Ky.
Mar. 23, 2007); *In re Enright*, No. 06-10747, 2007 WL 748432 (Bankr. M.D.N.C. Mar. 6, 2007);
*In re Crews*, No. 06-13117, 2007 WL 626041 (Bankr. N.D. Ohio Feb. 23, 2007); *In re Sawdy*,
362 B.R. 898 (Bankr. E.D. Wis. 2007) *vacated and remanded by Grossman v. Sawdy*, 384 B.R.
199 (E.D. Wis. 2008); *In re Zak*, 361 B.R. 481 (Bankr. N.D. Ohio 2007); *In re Wilson*, 356 B.R.
114 (Bankr. D. Del. 2006); *In re Prince*, No. 06-10328C-7G, 2006 WL 3501281 (Bankr.
M.D.N.C. Nov. 30, 2006); *In re McIvor*, No. 06-42566, 2006 WL 3949172 (E.D. Mich. Nov. 15,
2006); *In re Haley*, 354 B.R. 340 (Bankr. D.N.H. 2006); *In re Grunert*, 353 B.R. 591 (Bankr.
E.D. Wis. 2006) *abrogated by Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (B.A.P. 8th Cir.
2008); *In re Hartwick*, 352 B.R. 867 (Bankr.D.Minn.2006) *reversed by Fokkena v. Hartwick (In
re Hartwick)*, 373 B.R. 645 (D. Minn. 2007); *In re Fowler*, 349 B.R. 414 (Bankr. D. Del. 2006);
*In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006).

[42] *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (B.A.P. 8th Cir. 2008); *Ransom v. MBNA
America Bank, N.A. (In re Ransom)*, 380 B.R. 799 (B.A.P. 9th Cir. 2007); *Grossman v. Sawdy*,

14

nuances of each decision.[43]  For example, *In re Swan* identified seven different rationales used by courts to justify their respective positions.[44]  They are: (1) the "Plain Meaning" Rationale; (2) the "Applicable v. Actual" Rationale; (3) the Unfair Results Rationale; (4) the Efficiency Rationale; (5) the "Ownership/Liability" Distinction Rationale; (6) the Policy Rationale; and (7) the Reliance on IRS Materials Rationale.[45]  It is important to note that these rationales are not mutually exclusive and that courts frequently rely on combinations thereof.[46]  A brief discussion of each is warranted.

The "Plain Meaning" Rationale and the "Applicable v. Actual" Rationale are frequently considered in unison by decisions from both lines of authority because they are both require a textual

---

384 B.R. 199 (E.D. Wis. 2008); *United States Trustee v. Deadmond (In re Deadmond)*, No. CV 07-15-H-CCL, 2008 WL 191165 (D. Mont. Jan. 22, 2008); *Meade v. McVay (In re Meade)*, 384 B.R. 132 (W.D. Tex. 2008); *Wieland v. Thomas*, 382 B.R. 793 (D. Kan. 2008); *Fokkena v. Hartwick (In re Hartwick)*, 373 B.R. 645 (D. Minn. 2007); *Neary v. Ross-Tousey (In re Ross-Tousey)*, 368 B.R. 762 (E.D. Wis. 2007); *In re Reinstein*, No. 07-27045-jes, 2008 WL 2902170 (Bankr. E.D. Wis. July 28, 2008); *In re Watkins*, No. 07-6317-PHX-SSC, 2008 WL 2475749 (Bankr. D. Az. Apr. 10, 2008); *In re Bennett*, 371 B.R. 440 (Bankr. D. Cal. 2007); *In re Talmadge*, 371 B.R. 96 (Bankr. M.D. Pa. 2007); *In re Pampas*, 369 B.R. 290 (Bankr. M.D. La. 2007); *In re Howell*, 366 B.R. 153 (Bkrtcy. D. Kan. 2007); *In re Ceasar*, 364 B.R. 257 (Bankr. W.D. La. 2007); *In re Slusher*, 359 B.R. 290 (Bankr. D. Nev. 2007); *In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Oliver*, 350 B.R. 294 (Bankr. W.D. Tex. 2006); *In re Wiggs*, No. 06 B 70203, 2006 WL 2246432 (Bankr. N.D. Ill. Aug. 4, 2006); *In re Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006); *In re Carlin*, 348 B.R. 795 (Bankr. D. Or. 2006); *In re Lara*, 347 B.R. 198 (Bankr. N.D. Tex. 2006); *In re Barraza*, 346 B.R. 724 (Bankr. N.D. Tex. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006) *abrogated on other grounds by Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829 (B.A.P. 8th Cir. 2007); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006).

[43] Footnotes 39 through 42 are not meant to be exhaustive, but demonstrative of the vast difference of opinion on this subject.

[44] *In re Swan*, 368 B.R. at 17-18.

[45] *Id.*

[46] These rationales are equally applicable to both the IRS Housing Standard and the vehicle ownership expense deduction.

analysis.  In fact, the "Applicable v. Actual" Rationale is in some ways derivative of the "Plain Meaning" Rationale, likely stemming from the reluctance of courts to assert that the provision in question is unambiguous when it has generated over fifty cases taking opposite positions.  As such, I will address them together.

The Supreme Court of the United States' instructs that "where . . . the statute's language is plain, 'the sole function of the courts is to enforce it to its terms.'"[47]  Following this directive, courts have reached opposite conclusions.  *In re Wiggs*, for example, found 11 U.S.C. § 707(b)(2)(A)(ii)(I) unambiguously prohibited a Chapter 13 debtor from deducting an ownership expense that the debtor did not actually have.[48]  In contrast, *In re Fowler* concluded that "the Debtor is entitled to take a car ownership deduction in the amount set forth in the Local Standards for her ownership of one car, even though she has no car payment."[49]

Examining both lines of cases, there is a correlation between the result and the words emphasized by the court in performing its analysis.  Courts finding that the statute unambiguously precludes a debtor from claiming a phantom deduction, whether it be the full amount of the IRS Housing Standard or a ownership expense on a vehicle owned outright, observe that "applicable" modifies the phrase "monthly expense amounts specified under the National Standards and Local Standards," and contend that if every debtor were allowed the Local Standard amount, "applicable"

---

[47] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1981) (*quoting Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

[48] *In re Wiggs*, 2006 WL 2246432 at *6.

[49] *In re Fowler*, 349 B.R. at 419.

16

would be rendered superfluous.[50]  Such a result contradicts the "time-honored tenet that '[a]ll words and provisions of a statute are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant or superfluous.'"[51]

Courts concluding that the Local Standards are fixed allowances focus on two aspects of the statutory text.  First, several courts observe that the phrase "*shall be* the debtor's" immediately precedes the phrase "applicable monthly expense amounts specified under the National Standards and Local Standards."[52]  Put simply, these courts read this provision to merely require a debtor to enter the Local Standard amounts into Form 22C.[53]  "Applicable" is then construed to refer to the Local Standards as determined by the debtor's place of residence.[54]  Grammatically, "applicable" modifies "amounts specified" in the Local Standards and not "monthly expenses."[55]  Next, many courts focus on the presence of the word "actual" in the sentence "shall be . . . *applicable* monthly expense amounts specified under the National Standards and Local Standards, and *actual* monthly

---

[50] *See, e.g., In re Ransom*, 380 B.R. at 807-808; *In re Ross-Tousey*, 368 B.R. at 765; *In re Ceasar*, 364 B.R. at 362; *In re Wiggs*, 2006 WL 2246432 at *6; *In re Carlin*, 348 B.R. at 799.

[51] *Lopez-Soto v. Hawayek*, 175 F.3d 170, 174 (1st Cir.1999) (*quoting United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751-52 (1st Cir. 1985); *United States v. Ahlers*, 305 F.3d 54, 58 (1st Cir. 2002)).

[52] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[53] *See, e.g., In re Kimbro*, 389 B.R. at 523; *In re Musselman*, 379 B.R. at 589; *In re Briscoe*, 374 B.R. at 7.

[54] *In re Osei*, 389 B.R. 339; *In re Haley*, 354 B.R. at 344.

[55] *In re Mati*, 2008 WL 2389234 at *8; *In re Chamberlain*, 369 B.R. at 525; *In re Haley*, 354 B.R. at 344.

expenses for the categories specified as Other Necessary Expenses . . ."[56]  Applying the maxim that "[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another,"[57] these courts conclude that "applicable" must have a meaning distinct from "actual."[58]

The Unfair Results Rationale essentially states that a particular result provides unfair treatment among similarly situated parties.  This rationale has never been the sole justification for any ruling for an obvious reason - it can lend support to either interpretation of the statute.  Generally, one could argue that allowing a phantom expense deduction is unfair to unsecured creditors because the debtor is reducing the available income.[59]  On the other hand, in *In re Swan*, the court justified allowing the debtor an ownership expense deduction on a vehicle owned outright in part because it would be unfair to discriminate against debtors who have older, paid-off cars, as opposed to newer, encumbered ones.[60]  The court reasoned that a debtor with an old car owned free

---

[56] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[57] *Kibbe*, 361 B.R. at 312 (*quoting BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994)).

[58] *In re Pearson*, 2008 WL 2878619 at *5; *In re Kimbro*, 389 B.R. at 523; *In re Morgan*, 374 B.R. at 358; *In re Briscoe*, 374 B.R. at 7; *In re Sawicki*, 2008 WL 410229; *In re Chamberlain*, 369 B.R. at 525; *In re Swan*, 368 B.R. at 18; *In re Billie*, 367 B.R. at 591; *In re Ragle*, 2007 WL 1119632 at *4; *In re Enright*, 2007 WL 748432 at *5; *In re Crews*, 2007 WL 626041 *3-4; *In re Sawdy*, 362 B.R. at 911 *vacated and remanded by Grossman v. Sawdy*, 384 B.R. 199; *In re McIvor*, 2006 WL 3949172 at *4; *In re Haley*, 354 B.R. at 343; *In re Grunert*, 353 B.R. at 591; *In re Farrar-Johnson*, 353 B.R. at 230-231; *In re Fowler*, 349 B.R. at 418; *In re Demonica*, 345 B.R. at 902.

[59] *In re Sawdy*, 362 B.R. at 906; *but see In re Fowler*, 349 B.R. at 418.

[60] *In re Swan*, 368 B.R. at 19.

of liens will inevitably have to repair or replace the vehicle during the life of the chapter 13 plan.[61]

A debtor in this situation would have no savings amassed to deal with this foreseeable problem.[62]

The Efficiency Rationale is derivative of the Unfair Result Rationale.  This rationale concludes that

it is inefficient to deny a debtor a phantom expense deduction and then later require plan amendment

when the debtor suffers foreseeable increases in his housing costs or vehicle repair or replacement

costs.[63]

The "Ownership/Liability" Distinction Rationale characterizes the nature of the split of

authority over ownership expense deductions on vehicles owned outright.  Many courts hold that a

debtor is not entitled to vehicle ownership deduction without incurring expenses for the purchase or

lease a vehicle.[64]  Courts allowing such a deduction characterize the others as essentially equating

"ownership" with "liability for a debt."[65]  The United States Bankruptcy Appellate Panel for the

Sixth Circuit recently stated:

> This argument ignores the economic realities of vehicle ownership. The expenses of
> vehicle ownership are the fixed expenses that an owner incurs that naturally arise
> from ownership regardless of the vehicle's operation. By that definition, neither debt
> payments or lease payments are ownership expenses. Lease payments are not
> ownership expenses because by definition the debtor has no ownership. Debt
> payments are not ownership expenses because they are more naturally related to the
> necessities of financing the purchase. The expenses relating to vehicle ownership are
> the expenses for depreciation, insurance, licensing fees and taxes, each of which is
> a consequence of ownership and is incurred without regard to vehicle use. Ultimately,

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *See, e.g., In re Wilson*, 383 B.R. at 732; *Fokkena*, 373 B.R. at 652; *McGuire*, 342 B.R. at 613.

[65] *See In re Zak*, 361 B.R. at 488; *In re Fowler*, 349 B.R. at 420;

every vehicle owner incurs ownership expenses, and that is so regardless of debt or lease payments.[66]

A few courts have taken a very nuanced approach to this issue by suggesting the threshold for allowing the ownership expense deduction as whether the debtor has *some vehicle ownership expense*, and not necessarily a debt or lease payment.[67] The Panel in *Kimbro*, however, suggests that debtors are always entitled to the vehicle ownership expense deduction because "the ownership of a vehicle always involves an expense."[68]

Not surprisingly, there are Policy Rationales to support allowance and denial of the expense deductions at issue. The first is the policy objective of which eCAST urges me to be mindful. In *Kibbe*, the Panel stated the following with respect to BAPCPA:

> The intent of Congress can be best gleaned by examination of the legislative history surrounding the enactment of BAPCPA:
>
>> The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), which is intended to ensure that debtors repay creditors the maximum they can afford.
>
> H.R.Rep. No. 109-31, pt. 1, at 2 (2005) (emphasis supplied). The words "maximum" and "afford" tell the story. Congress intended that debtors pay the greatest amount within their capabilities. Nothing more; nothing less.[69]

eCAST argues that this policy objective identified by the Panel in *Kibbe* requires me to deny the Debtor's the phantom expense deductions because they are not reasonably necessary, and therefore

---

[66] *In re Kimbro*, 389 B.R. at 531.

[67] *In re Reinstein*, 2008 WL 2902170 at *2; *In re Ross-Tousey*, 368 B.R. at 765; In re Demonica, 345 B.R. at 904.

[68] *In re Kimbro*, 389 B.R. at 531.

[69] *In re Kibbe*, 361 B.R. at 314.

the Debtor could pay a greater amount than he proposes to in the Plan. Other courts, however, find

a policy rationale in favor of allowing phantom expense deductions. The Panel in *Kimbro* explains:

> Congress intended that there be uniform and readily-applied formula for determining
> when the bankruptcy court should presume that a debtor's chapter 7 petition is an
> abuse and for determining an above-median debtor's disposable income in chapter
> 13. By explicitly referring to the National and Local Standards, Congress
> incorporated a table of standard expenses that could be easily and uniformly applied;
> Congress intended that the court and parties simply utilize the expense amount from
> the applicable column based on the debtor's income, family size, number of cars and
> locale. The amounts are entered into the means test form and a determination of
> disposable income is accomplished without judicial discretion. The clear policies
> behind the means test were the uniform application of a bright-line test that
> eliminates judicial discretion. Plainly, Congress determined that these policies were
> more important than accuracy.[70]

These courts contend that Congress' clear intent to create a bright-line means test without judicial

discretion overrides the Congress' intent that debtors pay to the maximum of their ability.[71]

The Reliance on IRS Materials Rationale is perhaps the most contentious issue among the

lines of authority.   A large number of courts, approximately half, utilize the IRM or other IRS

guidelines to interpret the Local Standards.[72]   These courts conclude that because Congress

incorporated the Local Standards into the statute, Congress must have intended those standards to

---

[70] *In re Kimbro*, 389 B.R. at 528.

[71] *Id.*; *In re Briscoe*, 374 B.R. at 11-12; *In re Lynch*, 368 B.R. at 491.

[72] *See, e.g., In re Ransom*, 380 B.R. at 807; *Grossman v. Sawdy*, 384 B.R. at 204; *In re Meade*, 384 B.R. at 137; *Wieland*, 382 B.R. at 798; *Fokkena*, 373 B.R. at 650; *In re Watkins*, 2008 WL 2475749 at*1; *In re Bennett*, 371 B.R. at 445; *In re Talmadge*, 371 B.R. at 100; *In re Pampas*, 369 B.R. at 297; *In re Howell*, 366 B.R. at 155-56; *In re Ceasar*, 364 B.R. at 263; *In re Slusher*, 359 B.R. at 309; *In re Devilliers*, 358 B.R. at 863; *In re Oliver*, 350 B.R. at 301; *In re Wiggs*, 2006 WL 2246432 at *2; *In re Skaggs*, 349 B.R. at 597-598; *In re Carlin*, 348 B.R. at 797; *In re Lara*, 347 B.R. at 201; *In re Barraza*, 346 B.R. at 728; *In re McGuire*, 342 B.R. at 612-613; *In re Hardacre*, 338 B.R. at 726.

be applied in the same manner as the IRM.[73]  As such, it is appropriate to look to the IRM for the

context and meaning of the Local Standards.  The court in *In re Rezentes* went so far as to say that

if "Congress had intended to adopt the IRS Standards but prevent the courts from looking to the

IRS's own interpretations of its standards, it seems reasonable to expect that it would have said so

explicitly."[74]  Courts adopting the IRM uniformly deny debtor's phantom expense deductions on the

basis that IRM provides that "Taxpayers will normally be allowed the local standard or the amount

actually paid, whichever is less."[75]

The other half of courts reject the utilization of the IRM to interpret 11 U.S.C. §

707(b)(2)(A)(ii)(I) for a number of reasons.[76]  First, these courts observe that 11 U.S.C. §

707(b)(2)(A)(ii)(I) does not incorporate or even refer to the IRM.[77]  Many courts reason that if

Congress had intended to incorporate the IRM, it would have done so explicitly.[78]  Others, relying

the "shall be" textual rationale discussed above, contend that Congress expressly rejected the IRM

---

[73] *Id.*

[74] *In re Rezentes*, 368 B.R. at 61-62.

[75] IRM 5.15.1.7

[76] *See* footnotes 39 and 41, *supra*.

[77] *In re Pearson*, 2008 WL 2878619 at *5; *In re Kimbro*, 389 B.R. at 524; *In re Mati*, 2008 WL 2389234 at 11; *In re Sawicki*, 2008 WL 410229 at *3; *In re Musselman*, 379 B.R. at 590; *In re Barrett*, 371 B.R. at 859; *In re Vesper*, 371 B.R.at 433; *In re Armstrong*, 370 B.R. at 329; *In re Chamberlain*, 369 B.R. at 526; *In re Lynch*, 368 B.R. 491-492; *In re Billie*, 367 B.R. at 592; *In re Zaporski*, 366 B.R. at 767; *In re Crews*, 2007 WL 626041 at *5; *In re Sawdy*, 362 B.R. at 913 *vacated and remanded by Grossman v. Sawdy*, 384 B.R. 199; *In re Wilson*, 356 B.R. at 119; *In re Prince*, 2006 WL 3501281 at *3; *In re McIvor*, 2006 WL 3949172 at *2; *In re Hartwick*, 352 B.R. at 869 *reversed by Fokkena*, 373 B.R. 645; *In re Fowler*, 349 B.R. at 419.

[78] *Id.*

by enacting language that provides for contrary treatment.[79]  The crux of this reasoning is that there

is nothing left to interpret because 11 U.S.C. § 707(b)(2)(A)(ii)(I) states that the expenses "shall be

. . . the amounts specified" in the Local Standards.[80]  Courts find also support for this position in

BAPCPA's legislative history.  Because Congress enacted a version of BAPCPA which did not

reference to the IRM after having considered a prior version which did, these courts conclude

Congress intended that courts not to be bound by the financial analysis contained within the IRM.[81]

The court in *In re Lynch* also concluded that deferring to the IRM would enable the IRS to become

a rule making body for bankruptcy law, and thus improperly assigning a legislative function to an

agency.[82]

Several courts suggest that reliance on the IRM is inappropriate in the bankruptcy context

because its contents are directed to revenue officers for the purpose of collecting delinquent taxes.[83]

To this end, the revenue officer is afforded significant discretion in determining a taxpayer's ability

to pay a tax debt.[84]  In an extremely thorough discussion, the Panel in *In re Kimbro* cites ten

instances in the relevant provisions of the IRM where revenue officers are given discretion to deviate

---

[79] *See, e.g.*, *In re Kimbro*, 389 B.R. at 525.

[80] *See, e.g., In re Kimbro*, 389 B.R. at 523; *In re Musselman*, 379 B.R. at 589; *In re Briscoe*, 374 B.R. at 7.

[81] *In re Kimbro*, 389 B.R. at 526; *In re Musselman*, 379 B.R. at 590; *In re Barrett*, 371 B.R. at 858; *In re Vesper*, 371 B.R.at 430; *In re Armstrong*, 370 B.R. at 329; *In re Sawdy*, 362 B.R. at 912-913 *vacated and remanded by Grossman v. Sawdy*, 384 B.R. 199; *In re Wilson*, 356 B.R. at 119; *In re McIvor*, 2006 WL 3949172 at *2.

[82] *In re Lynch*, 368 B.R. at 491-492.

[83] *See In re Kimbro*, 389 B.R. at 528; *In re Mati*, 2008 WL 2389234 at *11; *In re Phillips*, 382 B.R. at 164; *In re Briscoe*, 374 B.R. at 9; *In re Chamberlain*, 369 B.R. at 525-526.

[84] *Id.*

23

from the guidelines.[85]   It found that applying the IRM to the means test in 11 U.S.C. §

707(b)(2)(A)(ii)(I) would require bankruptcy judges to determine each expense on a case by case

discretionary basis in direct contravention of Congress' intent in creating a bright-line means test.[86]

Lastly, a few courts have noted that the IRS has recently announced that it does not believe that the

IRM is applicable in bankruptcy:[87]

> **Disclaimer: IRS Collection Financial Standards are intended for use in
> calculating repayment of delinquent taxes. These Standards are effective on
> March 1, 2008 for purposes of federal tax administration only. Expense
> information for use in bankruptcy calculations can be found on the website for
> the U.S. Trustee Program.**[88]

C. The Phantom Expense Deductions

In the present case, I find the line of cases construing the Local Standards as fixed allowances

to be persuasive.   While I am loath to characterize 11 U.S.C. § 707(b)(2)(A)(ii)(I) as clear or

unambiguous in light of the vast amount of conflicting authority, I am persuaded by the textual

rationales discussed above that the most reasonable interpretation in light of the time honored rules

of statutory construction is that "shall be" indicates that the Local Standards shall be the expense

amounts entered on Form 22C without consideration of the Debtor's actual expenses.   "Applicable"

in this context simply means that debtors shall select the appropriate values from the Local Standards

table, taking the debtor's locality into account.   Construing "applicable" in the manner urged by

---

[85] *In re Kimbro*, 389 B.R. at 524-525.

[86] *Id.*

[87]   *In re Kimbro*, 389 B.R. at 527; *In re May*, No. 07-32994, 2008 WL 2690735 (Bankr.
S.D. Ohio July 7, 2008); *In re Osei*, 389 B.R. at 355; *In re White*, 382 B.R. 751 (Bankr. C.D. Ill.
2008).

[88] http://www.irs.gov/individuals/article/0,,id=96543,00.html (emphasis in original).

eCAST would not properly acknowledge the distinction between that term and "actual" mandated by their appearance in the same sentence.  I further note that reading the Local Standards as maximum allowable expenses would require me to read several more words into 11 U.S.C. § 707(b)(2)(A)(ii)(I) as it would need to reference a second number to form a limit.

I reject the Reliance on IRS Materials Rationale as it is clear that the statute neither references or incorporates it.  Moreover, this position is supported by the legislative history or BAPCPA.  The fact that the final version of the statute does not explicitly incorporate the IRM when a prior draft did establishes that Congress knowingly and intentionally rejected use of the IRM in this context.  Additionally, I agree with the Panel in *In re Kimbro* finding that Congress created a bright-line means test in 11 U.S.C. § 707(b)(2)(A)(ii)(I) to which the discretionary nature of the IRM is incompatible.

Lastly, I note that "ownership expense" is not shorthand for a vehicle loan or lease payment.  As the definition in *In re Kimbro* correctly observes, ownership expenses encompass a number of costs associate with owning a vehicle which do not include loan or lease payments.  My one caveat is that I do not agree that every vehicle has ownership costs.  While all *operating* vehicles incur some costs, a *non-operational* vehicle with no possibility of repair, due either to mechanical issues or the debtor's lack of will, does not.  To be entitled to an ownership expense deduction, a debtor must first demonstrate that he does have *some* ownership costs.  Here, there is no question that the F-150 operates and Schedule J discloses that the Debtor pays $150 per month for "Auto Insurance."[89]  I find this sufficient to warrant allowance of the Debtor's claimed ownership expense deduction with respect to the F-150.

---

[89] *See* Line T13.

Accordingly, the Debtor is entitled to the full amount of the Local Standards with respect to his housing expense and the F-150 ownership expense.  I also note that this result is consistent with Judge Feeney's decisions in *In re Phillips* and *In re Mati*.

D. The Harley

The expense deductions related to the Harley are a somewhat different issue because the expenses actually exist, but the result is the same.  Although eCAST urges me to follow *In re McGillis*[90] and construe 11 U.S.C. § 1325(b)(3) as offering a further guideline to ensure the expenses claimed by above median income debtors are reasonably necessary, I have already concluded that one of the purposes of BAPCPA was to create a bright-line means test.  As such, I will not further examine expenses expressly allowed under the means test absent extraordinary circumstances.[91]  In *In re Barrett*, the court allowed a debtor vehicle ownership expenses related to a truck as well as a motorcycle owned free and clear of liens.[92]  I see no reason to rule differently.

E. Disposable Income and Good Faith

Although I found that the Debtor properly claimed the expense deductions at issue, I still find that he improperly calculated his total expense deductions.  First, as the Trustee points out, the total amount does not include the $131 in additional expense claims on Line 60 of Form 22C[93] or the

---

[90] *In re McGillis*, 370 B.R. at 729.

[91] *See In re Phillips*, 382 B.R. at 165.

[92] *In re Barrett*, 371 B.R. at 859-860.  *See also In re Comstock*, 07-10718, 2008 WL 1925226 (Bankr. N.D. Cal. Apr. 30, 2008) (single debtor with no dependents allowed vehicle ownership expense deduction for two vehicles).

[93] *See* Line T16, T17.

401(k) expense of $144.86 reflected on Schedule I.[94]  Second, I note that Schedule I indicates that the Debtor pays $6.41 per month for life insurance.  This expense, however, is not reflected on Line 32 of Form 22C.[95]  Accordingly, I will increase the Debtor's total claimed expense deduction from $5,050.80 to $5,333.07.  Subtracting this amount from the $4,828.43, the Debtor's undisputed current monthly income, yields negative $504.64 in disposable income per month.  Because the Plan proposes to pay $94 per month, which is considerably higher than the Debtor's disposable income as reflected on Form 22C, I find the Plan represents a good faith effort at repayment.

## V. CONCLUSION

In light of the foregoing, I will enter an order overruling the Objection.

_William C. Hillman_

_____
William Hillman
United States Bankruptcy Judge

Dated: August 8, 2008

---

[94] *See* Line T25.

[95] *See* Line T26.